UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY JO SENNEFF,                                    Civil Action No. 15-13667

      Plaintiff,                                   HON. LINDA V. PARKER
                                                    U.S. District Judge
v.                                                  HON. R.  STEVEN WHALEN
                                                    U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Mary Jo Senneff ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  On October 4, 2016, the Court heard oral arguments by both parties.  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Dock. #13] be GRANTED and that Plaintiff's Motion for Summary Judgment [Dock. #12] be DENIED.

## PROCEDURAL HISTORY

On August 15, 2012, Plaintiff filed an application for DIB, alleging disability as of October 2, 2009 (Tr. 159).   After the initial denial of the claim, she requested an administrative hearing, held on March 18, 2014 in Fort Gratiot, Michigan before Administrative Law Judge ("ALJ")  Oksana Xenos (Tr. 37).   Plaintiff, represented by attorney Nicole Winston, testified (Tr. 40-52), as did Vocational Expert ("VE") Diane Regan (Tr. 53-56).  On April 7, 2014, ALJ Xenos found that Plaintiff was not disabled (Tr. 21-32). On August 18, 2015, the Appeals Council denied review (Tr. 1-4).  Plaintiff filed for judicial review of the Commissioner's decision on October 19, 2015.

## BACKGROUND FACTS

Plaintiff, born July 27, 1964, was 49 when the ALJ issued her decision (Tr. 32, 159). She completed two years of college and worked previously as a gardener, server, and concession worker (Tr. 196-197).  She alleges disability as a result of herniated discs of the cervical and thoracic spine and arthritis of the neck (Tr. 195).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

She was right-handed, stood 5' 7 ½" and weighed 183 (Tr. 40).  She held an Associates degree in criminal justice (Tr. 41).  She held positions as a store and hospital security guard more than 10 years earlier (Tr. 41).  She had made the three-mile drive to hearing by herself (Tr. 41).

Plaintiff lived alone with her husband and worked sporadically as a disc jockey ("DJ") (Tr. 42). Before working as a DJ, she worked as a server and bartender (Tr. 42). She stopped working as a server because the inability to change position caused fatigue (Tr. 43). Although the DJ job allowed her to change position more frequently, she would be unable to perform the DJ position full time because she required a job where she could change positions from sitting to standing every 30 minutes (Tr. 43-44). She did not lift over 10 pounds due to arm and finger tingling and numbness (Tr. 44). She coped with finger numbness and arthritis of the neck by using a neck brace, chair massager, and leaning against a tennis ball (Tr. 44). Plaintiff was able to load the dishwasher but relied on her husband for most of the meal preparation (Tr. 45-46). She spent her days watching television intermittently, reading self-help books, singing and listening to music (Tr. 46). The DJ position sometimes involved karaoke singing (Tr. 46). She had two dogs, a cat, and two parakeets (Tr. 47). She smoked three-quarters of a pack of cigarettes each day (Tr. 47). She had never canceled a DJ gig because of neck or back pain (Tr. 47-48). She relied on others to lift heavy equipment at work (Tr. 47). Following the DJ gigs, she would typically experience two "down days" recovering from the physical demands of the work (Tr. 48). She took Norco eight to ten days a month for neck, mid-back, and arm pain (Tr. 49). She experienced the medication side effect of disorientation (Tr. 48). A consultative physician had advised Plaintiff to undergo disc surgery (Tr. 50). Plaintiff had declined the recommended fusion surgery because it was "a 50/50 shot with no guarantee" (Tr. 51-52).

On a typical day, she experienced level "six to seven" pain on a scale of one to ten and "nine to ten" on bad days (Tr. 52).  Her pain increased with activity (Tr. 52).

### B.   Medical Evidence

#### 1. Treating Sources

December, 2010 treating records by George Carley, D.O. note that the conditions of rib pain and Irritable Bowel Syndrome were well controlled (Tr. 391, 393).  April, 2011 records by Shaw Chiropractic PC note Plaintiff's report of level "5" out of "9" pain (Tr. 306). An August, 2011 examination by Dr. Carley was unremarkable (Tr. 297).  The same month, Plaintiff underwent vocal cord surgery (Tr. 298).  Chiropractic records from August, September, and October, 2012 note Plaintiff's report of level "4" pain and between November, 2011 and February, 2011, level "5" pain  (Tr. 324-331, 332-347).  A December, 2011 MRI of the brain was negative for abnormalities (Tr. 240).    In January, 2012, Nalini Samuel, M.D. noted unremarkable neurological findings (Tr. 246).  February, 2012 MRIs of the cervical and thoracic spine showed disc herniation at C3-C4, C4-C5, and C6-C7 (Tr. 241-242).  The following month, Plaintiff reported that she had experienced neck pain for the past month (Tr. 249).  The same month, nerve conduction studies showed neuropathy of the lower extremities but were negative for the upper extremities (Tr. 251, 253).  Physical therapy records note left-sided upper extremity numbness (Tr. 275).  Chiropractic records note level "6" and "8"pain (Tr. 348-351)

In March, 2012 neurosurgeon Donald M. Seyfried, M.D., noting that the recent MRI showed cervical spondylosis, recommended physical therapy (Tr. 237-238, 255-256, 576-577).  Plaintiff reported that recent EMG studies of the upper and lower extremities were unremarkable (Tr. 237).  Physical therapy notes from the same month state that Plaintiff's pain was reduced with therapy (Tr. 282).  Plaintiff reported good results after a chiropractic adjustment (Tr. 277).

In April, 2012, Dr. Samuel noted Plaintiff's report of temporary improvement with physical therapy (Tr. 248 ).  Chiropractic records note her report of level "8" pain after performing yard work and other weekend activities (Tr. 362-364).  Physical therapy notes from the same month indicate that her pain was resolved with therapy exercises (Tr. 286).  Plaintiff noted that the pain was "inconsistent" (Tr. 286).   She declined recommendations for pain medicine (Tr. 248).   An MRI of the thoracic spine showed mild to moderate spondylosis (Tr. 243, 254).  June, 2012, chiropractic notes state that Plaintiff experienced increased pain after "riding her horses" (Tr. 369).  Dr. Samuel noted Plaintiff's report that she was unable to sit or stand for eight hours, had resumed physical therapy, and was icing her neck for relief (Tr. 247, 563).  Plaintiff denied musculoskeletal pain and noted that she was not interested in surgery (Tr. 247).  Dr. Samuel prescribed additional physical therapy (Tr. 247).

Also in June, 2012, Plaintiff reported that her long-term pain remained static, but that she coped by getting chiropractic adjustments and changing her sleep position (Tr. 260). In July, 2012, physical therapy was terminated due to Plaintiff's report of limited progress (Tr. 269). She reported moderate limitation in daily activities with "severe" limitation in lifting (Tr. 267).

In July, 2012, Dr. Samuel completed a residual capacity assessment, noting a diagnosis of cervical disc herniation with degenerative disc disease (Tr. 472). He reported that he examined Plaintiff four times in 2008 and the same number in 2012, noting that an examination one month earlier was "within normal limites" (Tr. 472). Dr. Samuel remarked that Plaintiff complained of pulsating contractions, stiffness, poor mobility, and left arm and hand pain and numbness (Tr. 472).

Dr. Samuel found that the physical symptoms would interfere with Plaintiff's work on a frequent basis but that she could perform "low stress" jobs (Tr. 473). She found that Plaintif was unable to sit or stand for more than five minutes at a time or sit, stand, or walk for even two hours in an eight-hour period but that Plaintiff would be required to walk every five minutes (Tr. 474). She found that Plaintiff required a position allowing for a "sit/stand at will" option (Tr. 475). She limited Plaintiff to lifting less than 10 pounds and twisting and climbing ladders "rarely" (Tr. 475). She found that Plaintiff did not require an assistive device (Tr. 475). She found that Plaintiff could stoop, bend, and climb stairs occasionally (Tr. 476).

The following month, Ian W. Shaw, D.C. filed out a an identical questionnaire, finding that Plaintiff's symptoms would interfere with her work "often," but that she was capable of low stress jobs (Tr. 479). He found that Plaintiff could walk one to two city blocks and sit for up to 10 minutes and stand for 30 before needing to change position (Tr. 480). He found that Plaintiff was unable to sit, stand, or walk for a total of even two hours in an eight-hour workday (Tr. 480). He found that Plaintiff was required to walk for five minutes at 10-minute intervals (Tr. 481). He found that Plaintiff would be required to take unscheduled five-minutes breaks (Tr. 481). He found that Plaintiff did not require an assistive device but was limited to lifting 10 pounds on an occasional basis (Tr. 481). He found that Plaintiff could perform postural activities, including climbing ladders, on an occasional basis but that due to symptomology, she would be required to miss work four days each month (Tr. 482).

A September, 2012 physical by Dr. Carley was unremarkable (Tr. 293). Physical therapy notes from the following month state that Plaintiff experienced increased pain after "spending the day raking leaves" (Tr. 384). She reported good results from massage (Tr. 385). The same month, Cory Zieger, M.D. noted a normal gait and no acute pain (Tr. 388). Plaintiff opted for massage therapy instead of surgery (Tr. 389). October, 2012 to December, 2012 chiropractic records state that Plaintiff experienced level "6" or "7" pain (Tr. 515-528).

January, 2013 chiropractic records note level "5" or "7" pain (Tr. 529-530).   The following month, she reported level "9" pain, decreasing to a "5" or "6" in March, 2013 (Tr. 533-536).   April through December, 2013 chiropractic records note level "5" to "8" pain (Tr. 538-560).

A May, 2013 chest x-ray was normal (Tr. 468).   The following month, imaging studies of the cervical spine showed mild disc space narrowing at C5-C6 with "mild" encroachment (Tr. 467).   Plaintiff reported "severe" neck pain for which Dr. Carley prescribed Robaxin and Motrin 800 (Tr. 445).   The following month, Dr. Carley advised Plaintiff to undergo epidural injections and prescribed Norco (Tr. 444).   July through December, 2013 massage therapy records state that Plaintiff reported consistently good results from treatment (Tr. 487-507).   In October, 2013, Dr. Samuel noted a normal gait, station, and neurological examination (Tr. 562).   A December, 2013 MRI of the cervical and thoracic spine showed cervical spondylosis with "minimal" thoracic spondylosis (Tr. 512, 564-565).   Plaintiff reported using a neck brace, using Norco at night, and icing her neck (Tr. 562).   In January, 2014 physiatrist Nick Reina, M.D. examined Plaintiff, noting that she appeared in discomfort (Tr. 585).   Plaintiff demonstrated normal muscle strength in the upper extremities (Tr. 585).   Dr. Reina recommended opiate pain management (Tr. 586).

## 2.   Non-Treating Sources

In January, 2013, Jogendra Singh, M.D. performed a non-examining assessment of Plaintiff's medical records on behalf of the SSA (Tr. 394-401).   She found that Plaintiff

could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an

eight-hour workday; and push and pull without limitation (Tr. 395).  She found that Plaintiff

could balance, stoop, kneel, crouch, crawl, and climb stairs on an occasional basis but was

precluded from all climbing of ladders, ropes, and scaffolds (Tr. 396).  She found that

Plaintiff was limited to occasional overhead reaching on the left and was required to avoid

concentrated exposure to environmental hazards (Tr. 397-398).

### C.  Vocational Expert Testimony

VE Diane Regan classified Plaintiff's past relevant work as a DJ as sedentary and

skilled; waitress, semiskilled/light; and concession worker, unskilled/medium[1] (Tr. 53, 231).

The ALJ posed the following question to VE Regan, describing a hypothetical individual of

Plaintiff's age, education and work experience:

> [C]an perform work at the light exertional level; cannot climb ladders, ropes,
> or scaffolds; can occasionally climb stairs and ramps; balance, stoop, kneel,
> crouch, and crawl, can occasionally reach overhead, can frequently finger and
> handle, and should avoid hazards such as moving machinery and unprotected
> heights.  Can an individual with that residual functional capacity and given
> profile perform any of the the Claimant's past work? (Tr. 53).

The VE replied that the above limitations would not preclude Plaintiff's past relevant

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

work as a DJ and waitress (Tr. 54). The VE testified further that the above limitations would additionally allow for the light, unskilled work of a packer (6,000 positions in southeastern Michigan); sorter (5,000); and inspector (6,000) (Tr. 54). The VE found that the limitation of only occasional pushing and pulling with the upper extremities would not preclude the past relevant work as a DJ and waitress (Tr. 54). She testified that if the limitations were amended to include a "sit/stand at will option," the waitressing work would be eliminated, the DJ position would be unaffected, and the unskilled work numbers would be halved (Tr. 54). The VE testified further that if the original hypothetical were for sedentary rather than light work (including the sit/stand at will option), the hypothetical individual could perform the DJ position as well as the work of a (sedentary) inspector (2,000); sorter (2,000); and assembler (3,000) (Tr. 55).

The VE testified that if the individual were off task up to 20 percent of the workday due to pain and other impairments, or, was unable to sit, stand, or walk for a total of eight hours a day five days a week, all competitive employment would be eliminated (Tr. 55). The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), except for her testimony regarding a sit/stand option, which was based on her own experience (Tr. 55). In response to questioning by Plaintiff's attorney, the VE stated that the need to miss more than two days of work each month would be work preclusive (Tr. 55-56).

### D.  The ALJ's Decision

Citing  the medical records, ALJ Xenos found that Plaintiff experienced the "severe" impairments of "degenerative disc disease, osteoarthrosis" but that the conditions did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24).  The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [S]he cannot climb ladders, ropes, or scaffolds; can only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead; can frequently finger and handle; can occasionally push and pull with the upper extremities; should avoid hazards, such as moving machinery and unprotected heights; and requires a sit/stand at will option at the workstation (Tr. 24).

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to perform any of her past relevant work, she could work as a packer, sorter, or assembler (Tr. 31).

The ALJ discounted the allegations of disability.  She noted that the medical records suggested intermittent, rather than frequent or constant pain (Tr. 29).  She noted that Plaintiff was able to perform yard work, ride horses, and care for her aging parents (Tr. 29-30).  The ALJ observed that Plaintiff obtained good results from physical therapy and chiropractic manipulation (Tr. 30).  The ALJ discounted Dr. Samuel's July, 2012 assessment in favor of Dr. Singh's non-examining assessment, finding that Dr. Samuel's treating opinion was not supported by his medical records (Tr. 26).

-11-

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### A. **The Treating Physician Analysis**

In her first argument for remand, Plaintiff contends that the ALJ erred by discounting Dr. Samuel's July, 2012 opinion. *Plaintiff's Brief,* 12-17, *Docket #12.*  Citing *Wilson, v. CSS,* 378 F. 3d 541, 544 (6th Cir. 2004), Plaintiff argues that the ALJ failed to articulate "good reasons" for the rejection of Dr. Samuel's findings. *Plaintiff's Brief* at 14-15 (Tr. 25-27, 471-476).  She contends that Dr. Samuel's disability opinion is supported by both the treating records and imaging studies.  *Id.* at 15-17).

Plaintiff is correct that the failure to provide a rationale for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS,* 710 F.3d 365, 376 (6th

Cir.2013); *Wilson,* 378 F.3d at 544–546 (*citing* 20 C.F.R. § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011). In explaining the reasons for giving less than controlling weight to a treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson,* at 544. "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart,* at 376 (*citing* SSR 96–2p, *5, 1996 WL 374188 (July 2, 1996).

As discussed above, Dr. Samuel's opinion included the finding that Plaintiff was unable to sit or stand for more than five minutes at a time or sit, stand, or walk for even two hours in an eight-hour period but would be required to walk every five minutes (Tr. 474). Dr. Samuel found the need for work with a "sit/stand at will" option (Tr. 475). She limited Plaintiff to lifting less than 10 pounds and twisting and climbing ladders "rarely" (Tr. 475). She found that Plaintiff did not require an assistive device and could stoop, bend, and climb stairs occasionally (Tr. 475-476). She found that Plaintiff was unable to stand, sit, or walk even two hours in an eight-hour workday.

-14-

If credited, Dr. Samuel's opinion that Plaintiff was unable to stand, sit, or walk even two hours in an eight-hour workday would result in a finding of disability.  20 C.F.R. § 404.1567(a).  However, the ALJ provided an adequate rational for declining less than controlling weight to the treating opinion.  First, the ALJ did not reject Dr. Samuel's findings altogether but instead, adopted the need for a "sit/stand at will option;" the preclusion on the rope, ladder, or scaffold climbing; and the limitation to otherwise occasional postural activities (Tr. 24, 476).  Second, the ALJ's rejection of Dr. Samuel's more extreme findings is well articulated and supported.  While Plaintiff argues that the rejection of Dr. Samuel's opinion is limited to a "blanket statement," *Plaintiff's Brief* at 15, in fact, the ALJ's finding that the opinion was not entitled to controlling weight was prefaced by a thorough discussion of Dr. Samuel's clinical findings (Tr. 25-26).  The ALJ cited Dr. Samuel's January, 2012 unremarkable neurological examination (Tr. 25).  The ALJ noted that Dr. Samuel's June, 2012 examination also yielded normal clinical findings (Tr. 26).  In fact, Dr. Samuel prefaces her assessment from the following month by noting that the June, 2012 examination was "within normal limits" and that the assessment was based on Plaintiff's claimed limitations (Tr. 472).  Dr. Samuel's finding that Plaintiff was unable to stand for more than five minutes or walk for more than short distances (Tr. 474) is also undermined by the accompanying finding that she did not require an assistive device (Tr. 28, 475, 562).  The ALJ noted that Dr. Samuel's disability opinion stood at odds with Plaintiff's ongoing refusal to take pain medication, a normal September, 2012 physical examination, subsequent observations of a

-15-

normal gait, and her ability to ride horses and spend a day "raking leaves" (Tr. 27-28, 293, 384, 388). The ALJ observed that Plaintiff was able to cope with her condition with the help of massage and chiropractic care and had declined aggressive treatment (Tr. 30, 389). The ALJ noted that the July, 2012 disability opinion was also undermined by Dr. Samuel's October, 2013 examination records showing a normal gait and station (Tr. 28, 562).

Consistent with the ALJ's findings, my own review of the records indicates that Plaintiff did not begin taking medication for the neck and back condition until May, 2013 (Tr. 467). Although Dr. Carley recommended steroid injections in June, 2013, it is unclear whether Plaintiff followed through on his recommendation for this relatively conservative treatment (Tr. 444). Dr. Samuel's finding that Plaintiff was unable to stand or sit for more than five minutes at a time is directly contradicted by Plaintiff's testimony that she could stand or sit for 30 minutes at a time (Tr. 43-44). While Plaintiff's counsel stated at the hearing that Plaintiff rode a horse on only one occasion,[2] her ability to ride horseback at all also undermines the finding that she was unable to sit for more than five minutes at a time (Tr. 411). Likewise, treating notes stating that Plaintiff was able to rake leaves for extended periods contradicts the finding that she was unable to stand for more than five minutes at a stretch (Tr. 28, 410-412, 416).

---

[2] Counsel indicated that the animal was a "therapy horse," although it is unclear what that is. In any event, the precise purpose of Plaintiff's horse ride is not part of the administrative record.

-16-

As argued at the hearing, Plaintiff's counsel also faults the ALJ for adopting Dr. Singh's January, 2013 non-examining assessment over Dr. Samuel's treating opinion. Plaintiff's counsel contends that Dr. Singh did not provide a rationale for the finding that Plaintiff could perform exertionally light work (Tr. 394-401). However, the ALJ's adoption of the non-examining assessment over the treating one does not provide grounds for remand. *See* SSR 96–6p, 1996 WL 374180, *3. (July 2, 1996)("In appropriate circumstances," the opinion of non-examining source "may be entitled to greater weight than the opinions of treating or examining sources").

Plaintiff is correct that Dr. Singh did not provide citations to the treating records and imaging studies to support his "light work" findings. However, Dr. Singh's findings indicate that he reviewed the medical records and imaging studies up to January, 2013. As the ALJ noted, Dr. Singh's findings reflect the treating records showing some degree of limitation resulting from the cervical spine condition. Consistent with Dr. Samuel's findings, Dr. Singh found that Plaintiff was limited to occasionally postural activities with a preclusion on the climbing of ropes, ladders, and scaffolds and a limitation to occasional overhead reaching on the left (Tr. 396).

Moreover, the records reviewed by Dr. Singh support the finding that Plaintiff could perform light work. While the February, 2012 MRIs of the cervical spine showing disc herniation, March, 2012 nerve conduction studies indicate that the condition did not create radiculopathy or other significant upper extremity symptoms (Tr. 253). Plaintiff's stated

-17-

ability to perform a wide variety of household and personal activities on a regular basis despite intermittent symptomology also supports Dr. Singh's finding that she could perform light work (Tr. 28). I also note that the ALJ identified a range of *sedentary* employment that the Plaintiff could perform. *See* fn. 4, below.

Because the ALJ did not err in according controlling weight to Dr. Singh's opinion and only partial weight to Dr. Samuel's, the treating physician analysis should remain undisturbed.

### B. The Credibility Determination

Citing *Bjornson v. Astrue*, 671 F.3d 640, 645–647 (7th Cir. 2012), Plaintiff also argues that the credibility determination is not supported by substantial evidence. *Plaintiff's Brief* at 17. She contends that her daily activities do not equate with the ability to perform full-time work. *Id.* (*citing Draper v. Barnhard*, 425 F.3d 1127, 1131 (8th Cir. 2005)).

For overlapping reasons with those set forth above, Plaintiff's contention that the ALJ's credibility determination was based only on "conclusory statements" does not provide grounds for remand. *Plaintiff's Brief* at 17-19. Despite Plaintiff's allegations of disabling pain, the ALJ noted that Plaintiff "had no interest in taking pain medication" or more aggressive treatment as of September, 2012 (Tr. 27). The record indicates that Plaintiff did not opt to take medication for the condition until May, 2013. The type of medication (or lack thereof) for the alleged conditions is one of the factors to be considered in assessing a claimant's credibility. *See* 20 C.F.R. §§ 404.1529(c)(3); *See also Pease v. Commissioner of Social Sec.,* 2015 WL 5010108, *8 (W.D.Mich.August 21, 2015)(claimant's lack of

-18-

medication, among other factors, was properly used to discount allegations of limitation); *Gier v. Commissioner of Social Sec.,* 2009 WL 838131,*10 (E.D.Mich. March 26, 2009)(credibility undermined where claimant did not require prescription pain medication for allegedly disabling physical condition). While the record shows that Plaintiff began taking opiate pain medication on an occasional basis in 2013, she testified that she took the medication only eight to ten days each month (Tr. 49).

While Plaintiff's relies on *Bjornson v. Astrue*, 671 F.3d 640, 645–647 (7th Cir. 2012), for the argument that the credibility determination was limited to administrative "boilerplate," in *Bjornson,* the Seventh Circuit did not remand on the basis that the opinion contained "boilerplate," but rather, the credibility determination amounted to a distortion of the treating records. *See Peace, supra,* (*citing Bjornson* at 644)("Notwithstanding the Seventh Circuit's criticism of . . . 'opaque boilerplate,' [the] Court did not summarily reverse the ALJ's decision for using the boilerplate," but instead, took issue with the substantive basis for the credibility determination). Because in this case, the ALJ's reasons for discounting Plaintiff's allegations reflect an accurate reading of the record, *Bjornson* is inapplicable.

Plaintiff also contends that the ALJ improperly relied on the sporadic daily activities to support the non-disability finding. She relies on *Draper, supra,* 425 F.3d at 1130–31, which states that the ability to perform a wide range of household activities on an intermittent basis does not establish "'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real

-19-

world.'" *Draper,* at 1131 (*citing McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982)(en banc)).  In contrast here, ALJ Xenos cited Plaintiff's wide range of daily but allegedly "short-duration" activities, but also supported the credibility determination by noting that Plaintiff declined aggressive treatment, declined to take pain medication on repeated occasions, and reported good results from massage and chiropractic treatment.  As in all cases brought under 42 U.S.C. 405(g), the ALJ also took Plaintiff's testimony at the administrative hearing.  "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007)(*citing Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); *See also Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989) (*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").[3]

---

[3]

    Although unrelated to the credibility determination, the administrative opinion does contain an erroneous finding.  ALJ Xenos stated that in January, 2014, "Dr. Reina noted a prior history of medication misuse and required the claimant to sign a pain management contract and submit to urine drug tests" (Tr. 28 *citing* Tr. 586).  However, Dr. Reina's records do not indicate a history of medication abuse.  He noted that the "Opioid Risk Tool"("ORT") showed a score of zero and that Plaintiff scored a six on the "Screener and Opioid Assessment for Patients with Pain" ("SOAPP") indicating a low risk for opioid abuse ((Tr. 586).  Moreover, Plaintiff's score of six (rather than one through five) appears to be based on her pack-a-day tobacco habit.

-20-

In closing, I note that while the record confirms that Plaintiff experiences some degree of limitation resulting from her neck and back condition, substantial evidence supports the conclusion that she is capable of a range of exertionally light work.[4]   Although my recommendation to uphold the Commissioner's decision should not be read to trivialize  her condition, the ALJ's  determination was well within the "zone of choice" accorded the administrative fact-finder and as such, should be remain undisturbed. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Dock. #13] be GRANTED and that Plaintiff's Motion for Summary Judgment [Dock. #12] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v.*

---

[4]    Even assuming that Plaintiff was restricted to a range of sedentary rather than light work, the VE testified that a sedentary restriction (accompanied by the non-exertional limitations found in the RFC) would still allow for a significant range of work (Tr. 55).

-21-

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the

 objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 31, 2016

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 31, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen